Thomas H. JOHNSTON, Jr., Appellant,

v.

George W. SIBLEY, Appellee.

No. 1054.

Court of Civil Appeals of Texas, Tyler.

Nov. 17, 1977.

Rehearing Denied Dec. 8, 1977.

Guy W. Rucker, Richardson, for appellant.

Timothy R. McCormick, Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

MOORE, Justice.

This is an appeal from a summary judgment. Plaintiff, Thomas H. Johnston, Jr., brought suit for damages against defendant, Dr. George W. Sibley, for medical malpractice. Plaintiff alleged that he was referred to Dr. Sibley by Fireman's Fund Insurance Company for an evaluative examination in connection with his claim against the insurance company for workmen's compensation benefits; that the doctor negligently failed to diagnose his disability and issued a report to the insurance company showing he suffered no disability whereas he was, and still is, suffering from at least permanent partial disability. He alleged that such negligent conduct resulted in a denial of his claim for workmen's compensation insurance, as well as other benefits, and prayed for damages.

Defendant answered with a general denial and filed a motion for summary judgment under the provisions of Rule 166–A, Tex.R.Civ.P. As grounds for a summary judgment, defendant alleged that under the undisputed summary judgment proof no physician-patient relationship existed between the plaintiff and the doctor and therefore, as a matter of law, the doctor

owed no duty and breached no duty owed to the plaintiff. Plaintiff did not reply to the motion. After a hearing the trial court entered an order reciting that no genuine issue of material fact was left to be determined by the court or the jury and that the defendant was entitled to judgment as a matter of law, from which judgment plaintiff duly perfected this appeal.

We affirm.

By a single point of error, the plaintiff contends that the court erred in granting the summary judgment, because the doctor owed him a legal duty to exercise ordinary care in making the examination and reporting his findings, irrespective of the fact that the doctor was employed and paid by the insurance company. In reply the defendant contends that, in the absence of a "physician-patient" relationship, no legal duty to the plaintiff arose and the trial court properly disposed of the matter by a summary judgment.

The facts are undisputed. According to the summary judgment proof, Thomas H. Johnston, Jr., was employed by A. F. Holman Boiler Works where he claimed to have sustained a compensable injury on August 13, 1974. He submitted a claim for workmen's compensation benefits to Fireman's Fund American Insurance Company, Holman's insurer. In an effort to assess its liability upon the claim the insurance company retained the defendant, Dr. George W. Sibley, to examine the plaintiff for the purpose of determining (1) the nature and extent of any orthopedic disease or injury and (2) whether the plaintiff was suffering from any disability because of any such injuries. Dr. Sibley was retained solely at the request of Fireman's Fund American Insurance Company and all fees for services rendered by him were paid by the insurance company. At the time he conducted the examination, Dr. Sibley was acting as a consultant for the insurance company and his report was prepared for use by the insurance company in evaluating the merits of the claim and for use in any proceedings that might be brought before the Industrial Accident Board. At no time did Dr. Sibley accept the plaintiff as his patient, nor does plaintiff contend that a physician-patient relationship existed. While Fireman's Fund American Insurance Company is not a party to the suit, plaintiff is obviously pursuing a claim adverse to the interests of the insurance company. The record shows that the judicial report was addressed Fireman's Fund American Insurance Company.[1] How the plaintiff obtained a copy of the report is not disclosed. The plaintiff makes no contention that he suffered any bodily injury during the course of the physical examination or that the doctor made any oral representations to him with regard to the medical findings.

1. "The following is a medical report on the above named patient first seen by this examiner on *February 13, 1975*.
CHIEF COMPLAINT: Pain in the low back.
PRESENT ILLNESS: The patient states that on 8/13/74 while on the job for A. F. Holman Boiler Works helping unload a trailer load of boiler pipe by crane, the load of pipe swung against him hitting him in the abdomen and mashing him against a table. He states he was dazed but not knocked down. He was taken to Brookhaven Hospital in the company pickup truck where he was seen by Dr. Andy Harrell and was admitted to the hospital for 10 days. He has been treated by Dr. Key since that time.
PAST HISTORY: The patient has been well and healthy. The patient states he has been on the job for 10 months. There is no history of previous difficulty with his back.
PHYSICAL EXAMINATION: The patient is a healthy appearing, 27 year old, right handed obese, white male who comes in on two Canadian crutches. His posture is good. The heel and toe walk is satisfactory. The straight leg raising test are [sic] negative. The ankle and knee jerks are equal and active. There is a full range of motion in the low back. There is no measurable atrophy in the thigh or calf. There is no sensory or motor loss in the lower extremities.
X–RAYS: Multiple x-ray views of the low back reveal fractures of the tips of the transverse processes of L–2, 3 and 4, healed and in good position.
OPINION: I am unable to detect any orthopedic disease or disability in this man on physical examination or x-ray study this date. Isolated fractures of the transverse processes of the lumbar vertebrae are usually disabling as a result of the above mentioned accident. The patient may return to full duties without restrictions."

No Texas case has been found dealing with a physician's duties and liabilities to a person examined pursuant to the physician's contract with that person's workmen's compensation insurer.

We have found only two cases from other jurisdictions which we consider to be directly in point. These cases hold, under practically the same facts, that no cause of action for medical malpractice exists. *Keene v. Wiggins*, 69 Cal.App.3d 308, 138 Cal.Rptr. 3 (1977); *Rogers v. Horvath*, 65 Mich.App. 644, 237 N.W.2d 595 (1975).

It is a well established principle of law that a physician is liable for malpractice or negligence only where there is a physician-patient relationship as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill, and there is a breach of professional duty to the patient. *Keene v. Wiggins*, supra. See also *Lotspeich v. Chance Vought Aircraft*, 369 S.W.2d 705 (Tex.Civ. App.—Dallas 1963, writ ref'd n.r.e.); *Childs v. Weis*, 440 S.W.2d 104 (Tex.Civ.App.— Dallas 1969, no writ). Whether any such duty arises when a physician examines a person not for the purpose of medical treatment is discussed in 10 A.L.R.3d 1071 (1966). The authorities reported there uniformly hold that in such cases no physician-patient relationship exists and thus the doctor's only duty is to conduct the examination in a manner not to cause harm to the person being examined.

In medical malpractice cases, the duty owed by the physician arises out of the physician-patient relationship. 70 C.J.S. Physicians and Surgeons § 37. No such relationship was shown to exist in the present case. Defendant was employed by the insurance company for the purpose of evaluating the physical condition of the plaintiff and to make a report showing the extent of his disability. Plaintiff did not employ defendant, nor does he contend he sought medical advice or treatment from him. There is nothing to indicate any express agreement between the plaintiff and the doctor. Without question these facts are wholly insufficient to create a physi-cian-patient relationship based on an express contract, nor is there anything to suggest that a contract arose by implication.

Plaintiff was in the position of pursuing a claim adverse to the insurance company. Plaintiff claimed that he was at least partially disabled and that such disability was permanent. The insurance company apparently did not agree and employed the defendant to make the examination for discovery purpose in order to resist his claim. The doctor, being in the employment of his adversary, owed him no duty except to avoid injuring him during the examination. Plaintiff knew that the examination was conducted on behalf of his adversary and to this extent the parties dealt at arms length.

In order to establish a cause of action, plaintiff had the burden of alleging and proving a set of facts showing he had a substantive right entitling him to maintain an action and that there was a violation or threatened violation of that right. 1 McDonald Texas Civil Practice sec. 202 at 167 (1965). Under the circumstances presented here, the only conceivable substantive right that the plaintiff may have had was a right to have the examination conducted in such a manner as not to injure him. He makes no claim that the doctor breached his duty of due care in this respect. Having no express or implied contract with the doctor, he had no substantive right to receive the doctor's professional skill and ability in making the examination and issuing his report. The summary judgment proof offered by the defendant was sufficient, as a matter of law, to establish the non-existence of a substantive right. It follows that no genuine issue of fact existed as to one of the essential elements of the plaintiff's claim against defendant. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex. 1970).

Accordingly, we hold that where a doctor, as here, conducts an examination of an injured employee solely for the purpose of evaluating the employee's disability for the insurance carrier after a claim for workmen's compensation has been filed, and the doctor neither offers nor intends to treat,

care for or otherwise benefit the employee and does not injure him during the course of the examination, the doctor is not liable for negligence in a suit for medical malpractice. His duty to use a professional standard of care in making the examination and in preparing the report runs only to the party requesting it. *Keene v. Wiggins*, supra; *Rogers v. Horvath*, supra. The trial court properly disposed of the matter by summary judgment.

The judgment of the trial court is affirmed.