**Jeanette C. ALMAGUER, Appellant,**

v.

**Douglas W. JENKINS, M.D., Appellee.**

No. 04–99–00425–CV.

Court of Appeals of Texas, San Antonio.

Nov. 30, 1999.

Peter J. Cresci, Atkins & O'Brien, L.L.P., San Antonio, for Appellant.

Bruce E. Anderson, Brin & Brin, P.C., San Antonio, Linda C. Breck, Thomas F. Nye, Brin & Brin, P.C., Corpus Christi, for Appellee.

Before TOM RICKHOFF, CATHERINE STONE, and PAUL W. GREEN, JJ.

## OPINION

RICKHOFF, Justice.

Jeanette C. Almaguer appeals an order granting summary judgment on behalf of Douglas W. Jenkins, M.D. Almaguer sued Jenkins for medical malpractice and common law negligence alleging that he improperly examined and reported her condition to the Department of Labor. We hold that a physician does not owe a duty to an examinee whom he examines for the sole purpose of preparing a report in conjunction with an adjudication of a workers' compensation claim. We affirm the summary judgment of the trial court.

## Background and Facts

Jenkins performed an examination of Almaguer at the bequest of the Department of Labor for the purpose of conducting a second opinion consultation in conjunction with the adjudication of a claim for workers' compensation. Jenkins reported to the Department of Labor that he found no evidence of rhinitis, sinusitis, cough, asthma, bronchitis or pneumonia that would be related to her alleged work exposures. He also reported to the Department of Labor that upon review of the records, he found no reasonable scientific evidence of an immune disorder, although he felt that Almaguer probably does believe she has an immune disorder. Almaguer alleges that Jenkins improperly tested and evaluated her and incorrectly reported her condition to the Department of Labor. Further, she alleges that due to his mis-diagnosis her workers' compensation was denied without medical evidence; and, she experienced time delays in receiving medical treatment and her workers' compensation benefits. She brought claims of medical malpractice, common law negligence, and gross negligence. The trial court granted summary judgment in favor of Jenkins.

## Standard of Review

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–549 (Tex.1985). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant; every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon,* 690 S.W.2d at 549. A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action is entitled to summary judgment. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993).

## Physician–Patient Relationship

Jenkins argues he was entitled to summary judgment because there was no physician-patient relationship and therefore he did not owe a duty to Almaguer. Almaguer argues that the duty owed to her was not solely premised upon the physician-patient relationship, but on a duty not to harm the patient. In *Armstrong v. Morgan,* 545 S.W.2d 45 (Tex.Civ.App.— Texarkana 1976, writ ref'd n.r.e.), a corporate employee was required to have a physical examination prior to his being promoted and the corporation employed a physician to make such examination. *Id.* Writing for the court, Justice Ray held that the physician had a duty not to injure him physically or otherwise. *Id.* at 46. If the physician negligently performed the examination and as a result gave an inaccurate report of the state of appellant's health, and appellant was injured as a proximate result thereof, actionable negligence would be shown. *Id.* at 46. Subsequent case law in Texas has abandoned Justice Ray's reasoning.

In *Pope,* the court held that an on-call physician consulted by an emergency room physician over the telephone, did not form the physician-patient relationship by expressing his opinion that patient should be transferred to another facility. *St. John v. Pope,* 901 S.W.2d 420 (Tex.1995). The Supreme Court of Texas **reversed** a court of appeals decision that held:

> By *undertaking* affirmatively to identify Pope's ailment based on the information supplied by Suarez, St. John assumed a legal duty to act with ordinary care in arriving at his identification and his consequent determination of whether he was qualified to treat the ailment.

*Id.* at 423.

Like the case in *Armstrong,* the appellate court in *Pope* held that the lack of a physician-patient relationship between Pope and St. John would not entitle the

doctor to summary judgment, in effect treating medical malpractice under a common law negligence theory. *Id.* at 423. The Supreme Court reversed determining that a physician's duties are *not* defined under the rules of ordinary negligence. *Id.* at 423. Although Almaguer plead common law negligence in addition to medical malpractice, because all of Almaguer's claims arise out of an alleged mis-diagnosis during a medical examination by a physician, the case is more appropriately viewed solely as a medical malpractice case.

■■■ Medical malpractice differs from ordinary negligence in the circumstances under which a duty arises. *Id.* at 423. Generally the duty to refrain from negligently injuring others requires no prior relationship. *Id.* at 423. However, physicians are not required to use their skill and knowledge on every person they meet. *Id.* at 423. The duty to treat the patient with proper professional skill flows from the consensual relationship between the patient and physician. *Id.* at 423. Only after a physician-patient relationship exists, whether by contract express or implied, can there be a breach of duty resulting in medical malpractice. *Id.* at 423; *Wilson v. Winsett,* 828 S.W.2d 231 (Tex. App.—Amarillo 1992, writ denied); *Salas v. Gamboa,* 760 S.W.2d 838, 840 (Tex. App.—San Antonio 1988, no writ); *Johnston v.. Sibley,* 558 S.W.2d 135, 137 (Tex. Civ.App.—Tyler 1977, writ ref'd n.r.e.).

■■■ A physician-patient relationship arises when the patient requests and is supplied medical information. *See Winsett* 828 S.W.2d at 233. Almaguer did not request treatment nor did she accept Jenkins diagnosis. In turn, Jenkins did not undertake to treat Almaguer, he merely undertook to examine the examinee at the request of, and only for a report to, the Department of Labor. In *Sibley* the court held that where a doctor conducts an examination of an injured employee solely for the purpose of evaluating the employee's disability for the insurance carrier after a claim for worker's compensation has been filed, and the doctor neither offers nor intends to treat, care for or otherwise benefit the employee and does not injure him during the course of the examination, the doctor is not liable for negligence in a suit for medical malpractice. *Sibley,* 558 S.W.2d at 137. "His duty to use a professional standard of care in making the examination and in preparing the report runs only to the party requesting it." *Id.* at 138. Thus, there was no physician-patient relationship between Jenkins and Almaguer by which he owed her that relationship's standard of care. *Cf. Pope,* 901 S.W.2d at 420; *Winsett,* 828 S.W.2d at 233 (physician who examined applicant for social security disability benefits at request of Texas Rehabilitation Commission was not in physician-patient relationship with examinee); *Sibley* 558 S.W.2d at 137 (physician conducting examination of injured employee for sole purpose of evaluating employee's disability for insurance carrier after claim for workmer's compensation had been filed was not in physician-patient relationship with employee); *Lotspeich v. Chance Vought Aircraft,* 369 S.W.2d 705, 710 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.) (physician employed by employer examining a job applicant did not owe any duty to the applicant to discover presence of tuberculosis from x-rays taken as part of a pre-employment physical exam).

■■■ Jenkin's only duty to Almaguer was not to injure her during the examination. *See Winsett,* 828 S.W.2d at 233; *Sibley,* 558 S.W.2d at 137–138. The duty of Jenkins to "not injure" Almaguer does not extend to whether or not he performed and reported the examination to the Department of Labor with adequate care, but only to injuries caused during the examination. *See Winsett,* 828 S.W.2d at 233; *Sibley,* 558 S.W.2d at 137–138.

As Jenkins has conclusively negated an essential element of Almaguer's cause of action, he is entitled to summary judgment. *Casas,* 856 S.W.2d at 733. Accord-

ingly, we affirm the summary judgment of the trial court.