**Jennifer Gaye DUBOSE, Appellant,**

v.

**WORKER'S MEDICAL, P.A. and Warren Roquet, M.D., Appellees.**

**No. 14–02–00783–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 23, 2003.

Judith Saldana Lee Ramsey, Peter N. Susca, San Antonio, for appellant.

Annette Anderson Murray, John R. Shepperd, Michael J. Carlson, Houston, for appellees.

Panel consists of Justices YATES, HUDSON, and EDELMAN.

## OPINION

J. HARVEY HUDSON, Justice.

Jennifer Gaye Dubose appeals the summary judgment granted in favor of Worker's Medical, P.A. and Warren Roquet, M.D. on her claims for fraud, negligent misrepresentation, and breach of the duty not to injure. We affirm, in part, and reverse and remand, in part.

### I. BACKGROUND

In October 1998, Dubose saw Roquet, owner of Worker's Medical, for a skin ailment. In the fall of 1998, Dubose applied for a job with American Cyanamid Corporation, which required that she undergo a pre-employment physical examination. Comprehensive Health Services arranged for Dubose's examination to be performed by Roquet, the same physician whom Dubose had previously seen for her skin ailment. Over a period of two days, Dubose

underwent various medical tests, including a chest x-ray. On December 9, 1998, Roquet told Dubose "the x-ray was completely normal," and she had no health conditions that would limit her ability to accept employment with American Cyanamid. Dubose thereafter received a letter from Comprehensive Health that summarized the results of her physical examination, but did not indicate there was any abnormality on the chest x-ray.

In November 1999, Dubose saw an oncologist, Susan Gingrich, complaining of anemia and fevers at night. A chest x-ray revealed an abnormality—a large left upper lobe mass and Dubose was diagnosed with Stage IV Hodgkins Lymphoma. Gingrich reviewed the chest x-ray taken in December 1998, and determined the x-ray was "patently abnormal."

Dubose brought claims against Roquet and Worker's Medical for fraud, negligent misrepresentation, and breach of the duty not to injure. Characterizing Dubose's claims as actually being a cause of action for medical malpractice, Roquet and Worker's Medical filed a motion for summary asserting there was no physician-patient relationship between Roquet and Dubose and, therefore, Roquet only had the duty not to injure Dubose. The trial court granted the motion for summary judgment on all of Dubose's causes of action against Roquet and Worker's Medical.

## II. Standard of Review

To prevail on a motion for summary judgment, a defendant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999). Once the defendant establishes that no genuine issue of material fact exists regarding an element of the plaintiff's claim, the plaintiff must present competent summary judgment evidence raising a fact issue on that element. *Guest v. Cochran,* 993 S.W.2d 397, 401 (Tex.App.Houston [14th Dist.] 1999, no pet.). In conducting our review of the summary judgment, we take as true all evidence favorable to the nonmovant, and make all reasonable inferences in the nonmovant's favor. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). A defendant, as movant, is entitled to summary judgment if it either disproves at least one essential element of each of the plaintiff's causes of action or establishes all the elements of an affirmative defense. *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997).

## III. Physician-Patient Relationship

Dubose claims Roquet and Worker's Medical did not prove up their right to summary judgment because they failed to show the absence of a physician-patient relationship or that Roquet did not injure her during the examination.

To prevail on a claim for medical malpractice, the plaintiff must establish, through expert testimony, the following elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) the applicable standard of care and its breach; (3) resulting injury; and (4) a reasonably close causal connection between the alleged breach of the standard of care and the alleged injury. *Preble v. Young,* 999 S.W.2d 153, 155 (Tex.App.Houston [14th Dist.] 1999, no pet.). The duty to treat a patient with professional care results from the consensual relationship between the patient and the physician; only when that relationship exists can there be a breach of a duty resulting in medical malpractice. *St. John v. Pope,* 901 S.W.2d 420, 423 (Tex.1995). In the absence of a physician-patient relationship, the doctor's only duty to the

plaintiff is to conduct the examination in a manner not to cause harm to the plaintiff. *Dominguez v. Kelly,* 786 S.W.2d 749, 751 (Tex.App.El Paso 1990, writ denied); *Johnston v. Sibley,* 558 S.W.2d 135, 137 (Tex.Civ.App.Tyler 1977, writ ref'd n.r.e.). The duty owed by the physician to the plaintiff is a question of law that must be determined before the issue of standard of care arises. *Pope,* 901 S.W.2d at 424.

Dubose acknowledges that when a doctor examines a person solely for pre-employment purposes or workers' compensation and disability evaluations, the doctor's only duty is not to injure that person.[1] However, Dubose contends the facts at hand take this case out of the scope of that general rule. Instead, Dubose argues a physician-patient relationship with Roquet was established when he treated her for a skin ailment in October 1998, prior to her pre-employment examination. Dubose, however, did not present this argument in the trial court in her response to the motion for summary judgment.

■ The nonmovant must present in her written response or answer any issues that would defeat the motion for summary judgment. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 343 (Tex.1993). Any issues not expressly presented to the trial court in a written response shall not be considered as grounds for reversal. Tex.R. Civ. P. 166a(c); *Lewis v. Adams,* 979 S.W.2d 831, 835 (Tex.App.Houston [14th Dist.] 1998, no pet.). In determining what issues were presented, the reviewing court may not rely on the appellate briefs or summary judgment evidence. *McConnell,* 858 S.W.2d at 341. Thus, the failure

to present issues to defeat summary judgment in the trial court waives the issues on appeal. *Kaye v. Harris County Mun. Util. Dist. N. 9,* 866 S.W.2d 791, 794 (Tex.App.Houston [14th Dist.] 1993, no writ).

■ The evidence regarding Roquet's treatment of Dubose's skin ailment in October 1998, was included in Dubose's summary judgment evidence. However, Dubose never mentioned in her response to the motion for summary judgment that Roquet had previously treated her. Instead, Dubose argued that by personally meeting with her and providing her with the results of the chest x-ray, Roquet acted affirmatively and undertook a duty to her. We conclude Dubose has waived her right to argue on appeal that she had a physician-patient relationship with Roquet based on his previous treatment of her in October 1998.

■ Dubose also asserts that a physician-patient relationship was established when Roquet provided her with the results of the examination, including the chest x-ray. Other courts of appeals have suggested that whether the plaintiff is supplied with the results of an examination is a factor in determining whether a physician-patient relationship has been established. *See, e.g., Almaguer,* 9 S.W.3d at 838 (stating physician-patient relationship arises when patient requests and is supplied with medical information and further observing plaintiff neither requested medical treatment nor accepted physician's diagnosis, and physician examined plaintiff as request of Department of Labor in connection with workers' compensation claim);

---

1. *See, e.g., Ramirez v. Carreras,* 10 S.W.3d 757, 761–62 (Tex.App.-Corpus Christi 2000, pet. denied); *Almaguer v. Jenkins,* 9 S.W.3d 835, 837 (Tex.App.San Antonio 1999, no pet.); *Wilson v. Winsett,* 828 S.W.2d 231, 232 (Tex. App.-Amarillo 1992, writ denied); *Domin-* guez, 786 S.W.2d at 750–51; *Johnston,* 558 S.W.2d at 137-38; *Armstrong v. Morgan,* 545 S.W.2d 45, 46 (Tex.Civ.App.-Texarkana 1977, no writ); *Lotspeich v. Chance Vought Aircraft,* 369 S.W.2d 705, 710 (Tex.Civ.App.Dallas 1963, writ ref'd n.r.e.).

*Wilson,* 828 S.W.2d at 233 (noting that plaintiff did not select physician, submit herself to him for medical treatment, and did not request physician to inform her of findings, but submitted to examination at request of Texas Rehabilitation Commission for determination of rehabilitative potential); *Johnston,* 558 S.W.2d at 136–37 (noting that plaintiff did not employ physician, seek medical advice or treatment, or assert that physician made any oral representations regarding medical findings, and that physician was employed and paid by insurance company and made report to insurance company for purpose of evaluating merits of workers' compensation claim); *Lotspeich,* 369 S.W.2d at 710 (observing that physician was employed by company to conduct pre-employment physical exam, which was solely for benefit of company, and plaintiff did not select physician to examine her for her benefit or request a report from him).

Here, Dubose never asserts that she selected or otherwise asked Roquet to treat her with regard to the pre-employment examination. Rather, Dubose's examination was arranged by Comprehensive Health on behalf of American Cyanamid solely for employment purposes. Roquet may have been more courteous and shown a better bedside manner than that of other physician's who conduct physical exams for employment purposes, but we do not believe this fact alone elevates their relationship to one of physician and patient. Instead, the Texas Supreme Court emphasized that the creation of the physician-patient relationship is based on *consent:*

> [P]hysicians are not obligated to practice their profession or render services to everyone who asks. It is only with a physicians consent, whether express or implied, that the doctor-patient relationship comes into being. Thus, we agree with those cases that hold that the duty

to treat the patient with proper professional skill flows from the consensual relationship between the patient and physician, and only when that relationship exists can there be a breach of a duty resulting in medical malpractice.

*Pope,* 901 S.W.2d at 423.

Merely providing Dubose with the results of the medical tests in a pre-employment medical examination arranged by a third-party on behalf of the employer is not sufficient to raise a fact issue on the existence of a physician-patient relationship.

## IV. Duty not to Injure

Dubose further argues that even if no physician-patient relationship exists, Roquet must establish that he did not harm her. She complains that appellees' motion for summary judgment did not include any evidence that Roquet did not harm her and Roquet's affidavit did not state that he did not harm her or deny that he told her she was in good health.

Dubose states in her affidavit that Roquet displayed the x-ray that was taken as part of her physical examination while informing her that she was in good health. Dubose also submitted the affidavit of her oncologist, Susan Gingrich, who, after reviewing the x-ray, stated the x-ray was patently abnormal, showing an upper lobe peritracheal mass, *i.e.,* a precursor of Dubose's cancer. Dubose argues that in affirmatively providing false information to her, her chances of survival and cure were impacted, thereby causing her harm. Similar arguments have been previously rejected. *See, e.g., Wilson,* 828 S.W.2d at 233 (rejecting argument that physician injured decedent by failure to inform her of life-threatening hilar mass on lung and further explaining that where no physician-patient relationship exists, physician

"does not violate the duty not to injure an examinee during an examination unless the doctor takes some affirmative action which produces an injury to the examinee"). Instead, the duty not to injure is violated only by an affirmative act of the physician during the examination that causes injury to the plaintiff. *Ramirez*, 10 S.W.3d at 762; *Almaguer*, 9 S.W.3d at 838; *Wilson*, 828 S.W.2d at 233; *Johnston*, 558 S.W.2d at 136–38.

Dubose has not asserted that Roquet injured in the course of the examination. Therefore, she has not raised a fact issue on whether Roquet breached the duty not to harm her during her pre-employment examination.

## V. DUBOSE'S CLAIMS FOR FRAUD AND NEGLIGENT MISREPRESENTATION

▇▇▇▇ Dubose also complains that appellee's motion for summary judgment did not address her claims for fraud and negligent misrepresentation. A motion for summary judgment must stand or fall on the grounds presented in the motion. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex.1997); *McConnell*, 858 S.W.2d at 339. The trial court may not grant summary judgment as a matter of law on a cause of action not addressed in the summary judgment proceeding. *Chessher v. Southwestern Bell. Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983); *City of*

*Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979); *Rose v. Kober Fin. Corp.*, 874 S.W.2d 358, 362 (Tex.App.-Houston [14th Dist.] 1994, no writ). For the court to do otherwise is reversible error. *Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex.1994), *overruled on other grounds by Lehmann v. Har-Con Corp.*, 39 S.W.3d 191 (Tex.2001); *Smith v. Atlantic Richfield Co.*, 927 S.W.2d 85, 88 (Tex.App.-Houston [1st Dist.] 1996, writ denied).

▇▇▇▇ Dubose recognizes that summary judgment is proper where a defendant has conclusively disproven an element central to all causes of action or an unaddressed cause of action derivative of the addressed causes of action. *Smith v. Heard*, 980 S.W.2d 693, 697–98 (Tex.App. San Antonio 1998, pet. denied); *see also Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 435–36 (Tex.App.Houston [14th Dist.] 1999, no pet.) (stating that if summary judgment is sufficiently broad, it may be deemed to cover additional causes of action under appropriate fact situations). However, she argues that because appellees' summary judgment evidence failed to disprove the ultimate fact upon which fraud [2] and negligent misrepresentation [3] were based, *i.e.*, that Roquet made the misrepresentation that Dubose was in good health and did not have any health conditions that would prevent her employment with American Cyanamid, the trial

---

2. The elements of common-law fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998).

3. The elements of a cause of action for negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991).

court erred in granting summary judgment on those claims.

Appellees, on the other hand, contend their motion for summary judgment addressed the medical negligence claim "while still contemplating the unaddressed fraud and negligent misrepresentation claims." Appellees maintain Dubose's claims for fraud and negligent misrepresentation are based on her visit to Roquet for her pre-employment examination and Roquets alleged negligence and breach of a duty owed her in failing to read her chest x-ray accurately and thereby diagnose her cancer.

In *Ruiz v. Walgreen Co.*, the plaintiff allegedly sustained injuries after ingesting medication from a misfilled prescription. 79 S.W.3d 235, 237 (Tex.App.Houston [14th Dist.] 2002, no pet.). The plaintiff and her husband sued the pharmacy for medical negligence, breach of express and implied warranties, and breach of contract. The trial court dismissed the plaintiffs' claims for failing to file an expert report under the Medical Liability and Insurance Improvement Act ("MLIIA"). *Id.* On appeal, the plaintiffs' argued the MLIIA did not apply to their claims for breach of warranties and violations of the Deceptive Trade Practices Act. *Id.* at 238. Rejecting the plaintiffs contention, this court found their petition asserted nothing more than "a straightforward medical malpractice claim." *Id.* Although we noted that causes of action for separate, independent torts committed by a medical professional can be maintained, we concluded that *Ruiz* "involve[d] no separate fraudulent act and no separate tort.... It derive[d] from the pharmacists alleged negligent actions that were inextricably related to his professional duty of dispensing medication." *Id.* at 239.

The crux of Dubose's claims against appellees is Roquet's failure to correctly read her chest x-ray, thereby resulting in his failure to detect her cancera medical negligence claim. Therefore, because appellees established there was no physician-patient relationship between Roquet and Dubose on which to base a claim for medical negligence, summary judgment was proper on Dubose's negligent misrepresentation and fraud claims. *See Lampasas*, 988 S.W.2d at 435–36; *Smith*, 980 S.W.2d at 697–98.

## VI. Dubose's Claims Against Worker's Medical

 Dubose further complains the motion for summary judgment did not articulate any reasons her claim against Worker's Medical should be dismissed. Appellees assert two arguments on appeal, both based on the fact that Dubose asserted the same claims against Worker's Medical as against Roquet, all of which were based on Roquet's conduct. First, because Roquet owed Dubose only the duty not to injure her during the exam, any derivative claims against Worker's Medical must also fail as a matter of law. Second, as the entity through which Roquet worked, Worker's Medical acted as agent for Roquet and, therefore, cannot be held liable in the absence of any liability as to Roquet.

Worker's Medical, however, did not present either of these, or any other, grounds to the trial court entitling it to summary judgment. It is well settled that a summary judgment cannot be affirmed on any ground not specifically presented in the motion for summary judgment. *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex.1992). Because Worker's Medical failed to present any grounds in the motion for summary judgment, we cannot now affirm the summary judgment in favor of Worker's Medical.

The trial court properly granted summary judgment in favor of Roquet; there-

fore, we affirm that portion of the judgment. The trial court, however, erred in granting summary judgment in favor of Worker's Medical; therefore, we reverse that portion of the judgment and remand it to the trial for proceedings consistent with this opinion. The judgment of the trial court is accordingly, affirmed, in part, and reversed and remanded, in part.